IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02243-CMA-MJW

DEVRA JEFFERS, MPA, MURP, MAED,

Plaintiff,

v.

DENVER PUBLIC SCHOOLS,
DAVID SUPPES, and
NICOLE PORTEE,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS (DOCKET NO. 9)

---

**Michael J. Watanabe**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Judge Christine M. Arguello on April 20, 2017. (Docket No. 29.) Now

before the court is Defendants Denver Public Schools ("DPS"), David Suppes, and

Nicole Portee's (collectively, the "Defendants") Motion to Dismiss. (Docket No. 9.) The

court has carefully considered the motion, Plaintiff's response (Docket No. 14), and

Defendants' reply. (Docket No. 17.) The court has taken judicial notice of the court's file

and has considered the applicable Federal Rules of Civil Procedure and case law. The

court now being fully informed makes the following findings of fact, conclusions of law,

and recommendation.

## I. BACKGROUND

### a. Relevant Facts

Plaintiff was employed by DPS as a school bus driver from January 31, 2012 to November 3, 2015. (Docket No. 3 at 9.) She was a member of the Amalgamated Transit Union Local 1563 ("ATU"), which is a party to a collective bargaining agreement ("CBA") with DPS. (*Id.* at 5.) Defendant David Suppes is an executive of DPS and Defendant Nicole Portee is its Executive Director of Transportation. (*Id.* at 10-11.) Plaintiff alleges that Defendant Portee was involved in the negotiations of the CBA. (*Id.* at 5.)

Plaintiff alleges that the termination of her employment stems from the Class Action Grievance she delivered to Defendant Portee in August 2014, after Plaintiff discovered that DPS employees were not receiving their flex pay. (*Id.* at 10-11.) Defendant Portee denied that this was the case. (*Id.*) Thereafter, Defendants "perpetrated an unrelenting and duplicitous pogrom against her in order to wrongfully terminate her." (*Id.*) In October 2014, she was placed on two weeks paid leave while DPS investigated a claim that she had pushed a student, even though administrators could have simply checked a video tape to see that the student had lied. (*Id.* at 12.) She then received a Letter of Reprimand, later reduced to a Letter of Warning, for yelling at students. (*Id.* at 13.) After Plaintiff complained about a fellow driver's break room behavior, Plaintiff told Defendant Portee that she was afraid for her job, to which Portee "vehemently denied that the plaintiff would be fired" in front of a witness. (*Id.* at 14.) However, Plaintiff was disciplined again on May 27, 2015 for her conduct. (*Id.* at 14-15.)

On October 9, 2015, Plaintiff received a phone call from a DPS human resources ("HR") representative about union activities and off duty time. (*Id.* at 15.) Plaintiff was not happy with the quality of customer service and called the HR representative a "bitch" after she thought the call had ended. (*Id.*) The call had not ended, however, and HR representative heard the derogatory statement and informed a supervisor. (*Id.* at 16.) Plaintiff's employment was then terminated. (*Id.* at 17.)

Consistent with the procedures outlined in the CBA, Plaintiff filed Level I and Level II grievances with DPS, protesting her dismissal. (*Id.* at 20-21.) She also had a hearing on the matter on February 29, 2016. (*Id.* at 21.) Her grievance was denied. (*Id.* at 22.) The ATU declined to pursue the matter further. (*Id.* at 7.) Thereafter, the Industrial Claims Appeals Office's denied Plaintiff's unemployment benefits application. This decision was affirmed by the Colorado Court of Appeals in June 2016. (Docket No. 9-11.)

**b. Procedural History**

Plaintiff initially brought this action in Arapahoe County District Court on August 12, 2016. Defendants timely removed the case pursuant to 28 U.S.C. §§ 1441 and 1446. (Docket No. 1.)

In their Motion to Dismiss (Docket No. 9), Defendants interpret Plaintiff's admittedly hard to understand Complaint to have alleged a 42 U.S.C. § 1983 due process claim and state law claims for breach of contract, wrongful discharge, discrimination, hostile work environment, fraud, and violation of the Lawful Activities Statute, Colo. Rev. Stat. § 24–34–402.5, an employment discrimination provision of the

Colorado Civil Rights Act ("CCRA"). The court finds this an accurate framing the pleading and will follow suit.

Plaintiff's response to the motion to dismiss (Docket No. 14) fails to address any of the arguments made by Defendant. She instead raises the new claim that Defendant Portee was an "'officer' under the Constitution and breached her fiduciary obligations to the People," including Plaintiff, and emphasizes her status as a *pro se* litigant.

## II. STANDARDS OF REVIEW

### a. *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle her to an application of different

rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the

complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### c. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court

6

considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

In assessing a motion to dismiss under Rule 12(b)(6), the usual rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir.2007). "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Here, both parties have presented materials outside of the pleadings in this case. However, "the district court may consider documents referred to in the complaint

if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)("[i]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss.). In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir.2006).

In deciding this motion, the only evidence the Court has relied upon outside of the Complaint are documents subject to judicial notice and those that have been referred to in Plaintiff's Complaint.

## III. ANALYSIS

### a. 42 U.S.C. § 1983 Procedural Due Process Claim

Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim should be dismissed for three reasons: (1) Plaintiff cannot establish a procedural due process violation giving rise to liability; (2) Plaintiff failed to state a claim against DPS; and (3) Defendants Suppes and Portee are entitled to qualified immunity. Because the Court finds that Plaintiff's due process rights were not violated at all, it need only address the first issue.

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1.

> [P]rocedural due process ensures that a state will not deprive
> a person of life, liberty or property unless fair procedures are

used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

*Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs*., 936 F.2d 483, 490 (10th Cir.1991). To determine whether a plaintiff was denied procedural due process, courts utilize a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). When a plaintiff claims a property interest in her job, the question is whether she had "a legitimate expectation of continued employment, as defined by some independent source such as a contract for a fixed term or state law." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1232 (10th Cir. 2014) (citation omitted). A public employee may possess a property interest in her employment if she "has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows for h[er] dismissal only for cause or its equivalent." *Rooker v. Ouray Cty.*, 841 F. Supp. 2d 1212, 1217 (D. Colo. 2012). Furthermore,

> [T]he Colorado Supreme Court has held that a terminated public employee may state a claim for relief for deprivation of property without due process of law "if rules or mutually explicit understandings, which the public employer was authorized to enact or make the basis of a binding agreement, create a sufficient expectancy of continued employment to give the employee a legitimate claim of entitlement.

*Angell v. Fairmount Fire Prot. Dist*., 907 F. Supp. 2d 1242, 1258 (D. Colo. 2012) (quoting *Adams Cnty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 695 (Colo.1990). It must be stated, however, that "[a]t-will employees lack a property interest in continued

employment." *Eisenhour*, 744 F.3d at 1232 (quoting *Darr v. Town of Telluride*, 495 F.3d 1243, 1252 (10th Cir.2007)).

Here, it is apparent that Plaintiff was an at-will employee. *See* Exhibits 1-3 of Defendant's Motion to Dismiss. (Docket Nos. 9-1, 9-2, & 9-3.) She points to no contract or law that requires her employment termination be for cause. To the extent that she relies on DPS's "Transportation Department Employee Handbook" (the "Handbook") or its "Basic Fairness and Due Process, Guidelines for Progressive Discipline" (the "Guidelines"), that reliance is misplaced. The Handbook states that it "is not intended to create an express or implied contract of employment or other legally enforceable promises . . . and you may not rely upon it as such." (Docket No. 9-4 at 10.) The Guidelines state that they are "not a contract or a promise of employment for any length of time under any particular conditions" and that "employees are employed at-will, and employment may be terminated for any time, with or without cause." Docket No. 9-5 at 38.) These clearly do not confer any property interest in Plaintiff's continued employment. *See Angell*, 907 F. Supp. 2d at 1259 ("The mere existence of an employment manual with hearing and review procedures is not adequate grounds for a property interest in continued employment—particularly when, as here, the Employee Manual explicitly and prominently disclaims contractual status and emphasizes that employees have at-will status."). *See also Darr*, 495 F.3d at 1252 (relying on a statement in an employee handbook that "[n]othing in these policies is intended to modify the Town's at-will employment policy" and holding that the handbook did not created a property interest in his continued employment, regardless of how employer

handled the termination); *Romero v. Denver Pub. Sch. Dist. No. 1*, No. 09–cv–01043, 2010 WL 2943528, at \*5, \*9 (D. Colo. July 22, 2010) (unpublished) (concluding that procedures in an employee handbook did not create a property interest in employment in part because the manual prescribing the procedures contained a disclaimer conspicuously stating that "[t]he procedures do not change the at-will status of classified employees").

Moreover, she cannot rely on the alleged promise made by Defendant Portee that she would not be fired. The Handbook clearly states, "No supervisor or manager has authority to enter into a contract of employment or other legally enforceable promise (express or implied) with any Employee, and no Employee may rely on any such representation or warranty as such." (Docket No. 9-4 at 10.)

Because Plaintiff was an at-will employee, she cannot show any expectation of continued employment, and therefore she did not have any protected property interest as it pertains to a procedural due process claim. Any problems Plaintiff may have with the grievance procedure are irrelevant, as procedural protections cannot create a property interest. *See Rooker*, 841 F. Supp. 2d at 1220 ("[W]ithout a property interest in his continued employment . . . a right to . . . procedure is exactly that—an entitlement to nothing but a procedure.").

For these reasons, Plaintiff has failed to state a procedural due process claim, and the Court recommends that it be dismissed.

**b. Breach of Contract**

Plaintiff alleges that Defendants breached the CBA by terminating her

11

employment and that Defendant Portee breached an verbal contract when she denied that Plaintiff would be filed. Both claims fail.

To recover on her breach of contract action, Plaintiff must prove (1) the existence of a contract; (2) that she performed his duties under the contract (or that she was justified in failing to do so); (3) that the defendant failed to perform the contract; and (4) resulting damages. *Long v. Cordain*, 2014 COA 177, ¶ 19.

Turning first to the alleged breach of the CBA, the most obvious problem with Plaintiff's claims is that neither she nor Defendants Suppes and Portee are parties to this contract. In general, only the parties to a contract are bound by its terms. *Allen v. Pacheco*, 71 P.3d 375, 379 (Colo. 2003). While Plaintiff may be a third-party beneficiary of the CBA, *see Brown v. Jefferson Cty. Sch. Dist. No. R-1*, 2012 COA 98, ¶ 37, it is obvious that Defendants Suppes and Portee, as non-parties, cannot be individually liable for any breach of the agreement.

Moreover, Plaintiff cannot maintain a breach of contract claim against DPS because she does not sufficiently allege that it breached the CBA. Indeed, Plaintiff's Complaint demonstrates that DPS complied with the terms of the CBA. Plaintiff submitted Level I and Level II grievances to DPS and she was given an opportunity to be heard. Her grievances were denied, and the ATU declined to file a Level III grievance on her behalf, as is its prerogative. These are the procedures outlined in the CBA and Plaintiff admits that her administrative remedies were exhausted when the union did not submit the Level III grievance. Thus, Plaintiff's claim that DPS "repudiated the grievance process" is without merit.

Plaintiff's breach of verbal contract claim likewise fails. As noted above, Plaintiff was informed in the Handbook that Defendant Portee had no authority to enter into an employment contract and she was warned that she should not rely on any such representations. (Docket No. 9-4 at 10.) Thus, Defendant Portee had no authority to affect Plaintiff's at-will employment status, and no employment contract was created.

Moreover, a contract is formed when an offer is made and accepted and the agreement is supported by consideration. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Plaintiff only alleges that Defendant Portee told DPS employees to not be afraid for their jobs and "vehemently denied that the plaintiff would not be fired[.]" There is no way to construe this statement as an offer for employment that was accepted by Plaintiff; nor is it supported by any purported consideration. In short, Plaintiff cannot show that a contract existed, much less that it was breached.

Accordingly, Plaintiff's breach of contract claims should be dismissed.

**c. Promissory estoppel**

The elements of a promissory estoppel claim are: "(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice." *Marquardt*, 200 P.3d at 1129.

Plaintiff pleads her promissory estoppel claim as follows: she "asserts that she had a contract with [DPS] and in breaking that contract she raises the issue of promissory estoppel." (Docket No. 3 at 4.) This is the very definition of an allegation that

13

is conclusory and unsupported factual averments. Plaintiff identifies no promises made by DPS or Defendant Suppes. Further, the Court agrees with Defendants that Defendant Portee's statement that Plaintiff would not be fired cannot reasonably be construed as a enforceable promise that Plaintiff would always be employed. As discussed above, Defendant Portee did not have the authority to enter into a binding employment contract. Plaintiff was aware of this because of the explicit language in the Handbook. Therefore, any reliance on her part would not be reasonable.

Plaintiff has not stated a plausible claim for promissory estoppel. This claim should be dismissed.

### d. Breach of Express Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendants "failed to heed the expressed covenant of good faith and fair dealing . . . contained in the [CBA] and the company's policies." (Docket No. 3 at 6.) This claim is vague and conclusory and should be dismissed.

In Colorado, it is still undecided whether a claim for the breach of an express covenant of good faith and fair dealing exists. *See Hoyt v. Target Stores, Div. of Dayton Hudson Corp*., 981 P.2d 188, 194 (Colo. App. 1998); *Meeker v. Life Care Centers of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 WL 5728787, at *2 (D. Colo. Sept. 30, 2015). If it does, "such a claim is a contractual one." *Hoyt,* 981 P.2d at 194.

Plaintiff does not identify where the express covenant of good faith and fair dealing is found in either the CBA or the company policies. If Plaintiff is referring to the grievance procedures contained in the CBA, that claim fails for the reasons discussed above; i.e., DPS followed the CBA's procedures. Such a claim certainly cannot rest on

the Handbook and Guidelines, which explicitly provide that they are not contractual in nature.

As alleged, Plaintiff has not stated a plausible breach claim for breach of the covenant of good faith and fair dealing against any of the Defendants.

### e. Wrongful Discharge

Plaintiff appears to bring a wrongful discharge claim against all Defendants, although it is not entirely clear from the Complaint. (Docket No. 3 at 6-7.) To the extent that Plaintiff brings a wrongful discharge claim against DPS, that claim is barred by the Colorado Governmental Immunity Act ("CGIA"). Section 24–10–106(1) of the Colorado Revised Statutes states that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." The definition of "public entity" includes school districts. C.R.S. § 24–10–103(5). Wrongful discharge is a common law tort claim, and is therefore barred by the CGIA. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 116 (Colo.1992); *Dyer v. Jefferson Cty. Sch. Dist. R-1*, 905 F. Supp. 864, 871 (D. Colo. 1995); *Holland v. Bd. of Cty. Comm'rs of Cty. of Douglas*, 883 P.2d 500, 508 (Colo. App. 1994). Accordingly, DPS is immune from Plaintiff's claim.

Plaintiff's wrongful discharge claim against Defendants Suppes and Portee also fails because there is no individual liability for a public policy wrongful discharge claim under Colorado law. *See Ayon v. Kent Denver School*, No. 12-cv-02546-WJM-CBS, 2013 WL 1786978 (D. Colo. Apr. 26, 2013). Defendants Suppes and Portee were, if

anything, Plaintiff's supervisors, not her employer, and therefore they cannot be liable for Plaintiff's wrongful discharge. *Id.*

For these reasons, Plaintiff's wrongful discharge claim should be dismissed.

**f. Fraud**

A fraud claims arises from a false or misleading misrepresentation that induces the recipient to act or refrain from acting, and "is actionable when it is made either with knowledge of its untruth, or recklessly and willfully without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Brodeur v. Am. Home Assur. Co.,* 169 P.3d 139, 153 (Colo. 2007) (citations omitted). Like the wrongful discharge claim discussed above, Plaintiff's fraud claim sounds in tort. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1005 (Colo. 2008) (recognizing that "a claim that is supported by allegations of misrepresentation or fraud is likely a claim that could lie in tort"). Therefore, DPS is immune to suit under the CGIA.

When alleging fraud against Defendants Suppes and Portee, Plaintiff was required to "state with particularity the circumstances constituting fraud . . .." Fed. R. Civ. P. 9(b). Plaintiff makes no allegations that Defendant Suppes made a false or misleading representation; as Defendants point out, Suppes is not even alleged to have spoken to Plaintiff. Plaintiff also failed to state with any particularity a fraud claim against Defendant Portee. The Court assumes that Plaintiff is alluding to Defendant Portee's statements that Plaintiff should not be afraid for her job and her denial that Plaintiff would be fired. However, Plaintiff does not allege that Defendant Portee intended to deceive Plaintiff with these statements, nor that they induced her to act or

16

not to act in a way that caused her damages.

Accordingly, Plaintiff's fraud claim should be dismissed.

### g. Discrimination and Hostile Work Environment

Defendants argue that Plaintiff's discrimination and hostile work environment

claims should be dismissed because Plaintiff failed to exhaust administrative remedies

and because she cannot plead a plausible claim for relief. The Court agrees.

Plaintiff brings her employment discrimination claim under the Colorado

Anti–Discrimination Act ("CADA"), Colo. Rev. Stat. § 24–34–401 *et seq.* (Docket No. 3

at 3, 4, 6, 8, & 18). However, § 24-34-306(14) requires a plaintiff to exhaust

administrative remedies before bringing a claim under this article. *See also Brooke v.*

*Rest. Servs., Inc.,* 906 P.2d 66 (Colo.1995). "A notice of right to sue shall constitute

final agency action and exhaustion of administrative remedies and proceedings

pursuant to this part." C.R.S. § 24-34-306(15).

While Plaintiff received a right to sue from the Equal Employment Opportunity

Commission ("EEOC"), she did not receive one from the Colorado Civil Rights Division

("CCRD"), as required by statute. "An EEOC right-to-sue letter does not strip the CCRD

of jurisdiction over CADA claims." *Jackson v. City & Cty. of Denver*, 2012 WL 4355556,

at *2 (D. Colo. Sept. 24, 2012). Thus, Plaintiff failed to exhaust administrative remedies,

and she cannot maintain her discrimination claim against Defendants.

Even if Plaintiff had exhausted administrative remedies, she has not alleged a

plausible claims of discrimination or hostile work environment. As elements of both

discrimination and hostile work environment, Plaintiff was required to allege that she

17

belonged to a protected class and that she was harassed or discriminated against because of her membership in that class. *See St. Croix v. Univ. of Colo. Health Scis. Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007); *Bronakowski v. Boulder Valley Sch. Dist.*, 549 F. Supp. 2d 1269, 1277 (D. Colo.), *aff'd*, 294 F. App'x 408 (10th Cir. 2008). Even accepting Plaintiff's allegations as true, the Court finds that she does not identify the protected class that she belonged to, or that she was targeted for discrimination and harassment for belonging to a protected class. In short, she fails to state a plausible claim for unlawful employment discrimination.

### h. Lawful Off-Duty Activities Statute

Plaintiff alleges that she was terminated for engaging in any lawful activity off the premises of the employer during nonworking hours, in violation of Colo. Rev. Stat. § 24–34–402.5, Colorado's Lawful Off–Duty Activities Statute ("LODAS"). LODAS prohibits an employer from terminating an employee "due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours." § 24–34–402.5(1). However, an employer may terminate an employee if the activity at issue:

> (a) Relates to a bona fide occupational requirement or is **reasonably and rationally related to the employment activities and responsibilities of a particular employee** or a particular group of employees, rather than to all employees of the employer; or
>
> (b) Is necessary to avoid a conflict of interest with any responsibilities to the employer or the appearance of such a conflict of interest.

§ 24–34–402.5(1) (emphasis added).

18

Plaintiff encounters two problems with this claim. First, she did not exhaust administrative remedies by receiving a right to sue notice from the CCRD, which is required by §§ 24-34-306(14)-(15). Second, Plaintiff admits that she called the HR representative a "bitch" during telephone call in which Plaintiff's purpose was "to request information about union activities and off duty time." (Docket No. 3 at 15.) "Employment-related activities are those that have an inherent connection with employment and emanate from the duties of the job." *Williams v. Rock Tenn Servs*., Inc., 2016 COA 18, ¶ 24 (internal quotations omitted). "[R]easonably and rationally related employment activities are those that necessarily are not in direct conflict with the essential business-related interests of the employer." *Id.* at ¶ 25. Despite Plaintiff's objection that the "discussion was not a bona fide occupational requirement, and had no applicability to her job duties as a school bus driver" (Docket No. 3 at 15), it is clear that this conversation was reasonably and rationally related to Plaintiff's employment.

Therefore, Plaintiff's LODAS claim should be dismissed.

## I. Plaintiff's Response

As stated above, Plaintiff did not address the arguments raised in Defendants' Motion to Dismiss (Docket No. 9) in her Response. (Docket No. 14.) Rather, she made new, conclusory allegations that Defendants breached a fiduciary duty owed to Plaintiff by firing her. Plaintiff, however, cannot amend her Complaint by adding factual allegations in response to Defendants' motion to dismiss. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). These arguments are improper and are not considered by the Court in making its recommendation.

## IV. CONCLUSION

Based upon the foregoing, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 9) be GRANTED and that Plaintiff's Complaint (Docket No. 3) be DISMISSED WITHOUT PREJUDICE.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)© and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


                                        BY THE COURT

Date:  May 11, 2017                     s/ Michael J. Watanabe
       Denver, Colorado                 Michael J. Watanabe
                                        United States Magistrate Judge